| | |
|---|---|
| TROY FONDREN and CHERYL KOBLESKI, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br>v.<br><br>STATE COLLECTION SERVICE INC.,<br><br>        Defendant. | Case No.: 20-cv-100<br><br>**CLASS ACTION COMPLAINT**<br><br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Troy Fondren is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff Cheryl Kobleski is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

5. Each Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from each Plaintiff a debt allegedly incurred for personal, family, or household purposes.

6. Each Plaintiff is also a "customer" as defined in the Wisconsin Consumer Act, Wis. Stat. § 421.301(17), in that the alleged debt arose from consumer transaction that included agreements to defer payment, namely medical services.

7. Defendant State Collection Service, Inc. ("SCS") is a collection agency with its principal offices located at 2509 South Stoughton Road, Madison, Wisconsin 53716.

8. SCS is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

9. SCS is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

10. SCS is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

### *Facts Relating to Plaintiff Fondren*

11. On or about January 26, 2019, SCS mailed a debt collection letter to Plaintiff regarding an alleged debt owed to Aurora Healthcare ("Aurora"). A copy of this letter is attached to this Complaint as Exhibit A.

12. Upon information and belief, the alleged debt listed in Exhibit A was incurred as the result of a transaction for personal medical in which payment was deferred by agreement. *See Tylke v. Advanced Pain Mgmt., S.C.*, Case No. 14cv5354 (Milwaukee Co. Cir. Ct., Dec. 11, 2014) ("Any time a merchant sends a bill for goods or services after a consumer transaction has taken place, there is an 'agreement to defer payment.'").

13. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

14. Upon information and belief, <u>Exhibit A</u> is a form debt collection letter used by Defendant to attempt to collect alleged debts.

15. <u>Exhibit A</u> includes the following representations:

> Account #: ███9945
>
> Total Amount Due: $ 90.80
>
> This is to notify you that your postdated check in the amount of $ 45.40 will be deposited on 02/01/19.
>
> Thank you for your payment.

16. <u>Exhibit A</u> states that the "Total Amount Due" as of January 26, 2019 is $90.80, and states that "your postdated check in the amount of $45.40 will be deposited on 02/01/19."

17. The representation in <u>Exhibit A</u> that there was a "postdated check in the amount of $45.40" is confusing and misleading. A scheduled ACH draft was not a "postdated check." These are different forms of payment, and the unsophisticated consumer would confused by the reference to a form of payment that she was not using. *See Robinson v. Cavalry Portfolio Servs., LLC*, 365 Fed. Appx. 104, 107 (10th Cir. 2010).

18. <u>Exhibit A</u> is also misleading and confusing on its face as to the amount, character, and legal status of the debt.

19. Upon information and belief, Plaintiff and SCS entered into an agreement for payment of the "Total Balance Due" over time.

20. The agreement Plaintiff entered with SCS is a legally enforceable contract that allowed Plaintiff to defer payment pursuant to the contractual terms.

21. SCS offered Plaintiff the option to defer payment. Plaintiff accepted that option.

22. Further, both parties exchanged consideration. Plaintiff gave consideration in the form of the initial payment of $45.40 and the promise to pay the debt in subsequent installments.

SCS gave consideration in the form of promising to forego payment in excess of the monthly installment amounts as they became due.

23.     By mailing Exhibit A, SCS did not honor this agreement.  The representation in Exhibit A that the "Total Amount Due" on January 26, 2019 was $90.80 is plainly false and misleading.  Because SCS and Plaintiff had previously agreed to extend payment over time, and Plaintiff was current on this payment plan, the account balance was not due in its entirety on January 26, 2019.

24.     The unsophisticated consumer would understand a debt collection letter that states that the "Total Amount Due" was $90.80 to mean that this amount is, in fact, due, payable, and immediately recoverable as of the date of the letter.  *See, e.g., Chuway v. Nat'l Action Fin. Servs.*, 362, F.3d 944, 948 (7th Cir. 2004); *Machnik v. RSI Enters.*, No. 17-cv-864, 2017 U.S. Dist. LEXIS 160772, at *6 (E.D. Wis. Sept. 29, 2017) ("In the context of a debt, 'owing' an amount is distinguishable from the amount 'due.'  For example, a debtor might 'owe' a certain amount on a loan, but only a portion of that amount will be 'due' at a particular time."); *Gathuru v. Credit Control Servs.*, 623 F. Supp. 2d 113, 121 (D. Mass. 2009) ("Any collection letter would have to be worded precisely and clearly.  But it certainly cannot state that an amount is 'due' when it is not.") (citing *Chuway*, 362 F.3d at 949).

25.     Plaintiff was confused and misled by Exhibit A.

26.     The unsophisticated consumer would be confused by Exhibit A.

27.     Plaintiff had to spend time and money investigating Exhibit A, and the consequences of any potential responses to Exhibit A.

4

*Facts Relating to Plaintiff Kobleski*

28. On or about April 7, 2019, SCS mailed a debt collection letter to Plaintiff regarding an alleged debt owed to "CHILDRENS HOSPITAL OF WISCONSIN" ("CHW"). A copy of this letter is attached to this Complaint as Exhibit B.

29. Upon information and belief, the alleged debt listed in Exhibit B was incurred as the result of a transaction for personal medical in which payment was deferred by agreement. *See Tylke v. Advanced Pain Mgmt., S.C.*, Case No. 14cv5354 (Milwaukee Co. Cir. Ct., Dec. 11, 2014) ("Any time a merchant sends a bill for goods or services after a consumer transaction has taken place, there is an 'agreement to defer payment.'").

30. Upon information and belief, Exhibit B is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

31. Upon information and belief, Exhibit B is a form debt collection letter used by Defendant to attempt to collect alleged debts.

32. Exhibit B includes the following:

**WHERE IS THE PAYMENT YOU PROMISED???**

Exhibit B.

33. The representation in Exhibit B that Plaintiff "PROMISED" a payment is confusing and misleading.

34. The representation in Exhibit B that Plaintiff has not delivered on a "PROMISED" payment implies that the consumer is dishonest. *See, McMillan v. Collection Professionals, Inc.*, 455 F.3d 754, 761-62 (7th Cir. 2006).

35. As the Seventh Circuit explained under similar circumstances, "[b]y calling into question a debtor's honesty and good intentions simply because a check was dishonored, a

collection letter may be making a statement that is false or misleading to the unsophisticated consumer." *McMillan*, 455 F.3d at 762. "Calling into question another's honesty, and implying that the individual has dishonest intentions arguably rises to the level of language that could shame or humiliate the reader of the letter." *Id.* at 763.

### *The FDCPA*

36.     The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d

6

773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes ... do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

37. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt

collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

38. Misrepresentations of substantive information about the debt collector or the debt, including the debt collector's licensing status in Wisconsin, injures or risks injury to interests expressly protected by Congress in the FDCPA. *See Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Encore Receivable Management, Inc.*, 18-cv-1484-WED, 2019 U.S. Dist. LEXIS 134377 (E.D. Wis. Aug. 9. 2019); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019); *Degroot v. Client Servs.*, No. 19-c-951, 2020 U.S. Dist. LEXIS 6677, at *6-9 (E.D. Wis. Jan. 15, 2020); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

39. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

40. 15 U.S.C. § 1692e(2)(a) specifically prohibits the "false representation of the character, amount, or legal status" of an alleged debt.

41. 15 U.S.C. § 1692e(7) specifically prohibits "the false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer."

8

42. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

43. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

44. 15 U.S.C. § 1692f(1) specifically prohibits "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

45. The Seventh Circuit has held that "The Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, requires that any letter by a debt collector as defined by the Act state 'the amount of the debt' that the debt collector is trying to collect." *Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944, 946-47 (7th Cir. 2004) (citing 15 U.S.C. § 1692g(a)(1); *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000)).

46. It is plainly misleading and unfair to misrepresent a portion of the debt that is owed is "due" when it is not. *Chuway*, 362 F.3d at 948 (explaining that misrepresenting the entire account balance as "due" when it has not been accelerated violates the FDCPA because the consumer "might pay the larger amount thinking she would be sued otherwise, even though the extra $ 200 might not yet be due, let alone overdue."); *see also, Miller*, 214 F.3d at 875 ("What they certainly could do was to state the total amount due--interest and other charges as well as principal--on the date the dunning letter was sent. We think the statute required this.").

47. While *Miller* addressed a debt collector's obligation to provide the amount of the debt under 15 U.S.C. § 1692g(a)(1), the Seventh Circuit has held that the standards for claims under § 1692e and § 1692g are the same. *McMillan v. Collection Professionals, Inc.*, 455 F.3d 754, 759 (7th Cir. 2006).

> We cannot accept the district court's view that claims brought under § 1692e or § 1692f are different from claims brought under § 1692g for purposes of Rule 12(b)(6) analysis. Whether or not a letter is 'false, deceptive, or misleading' (in violation of § 1692e) or 'unfair or unconscionable' (in violation of § 1692f) are inquiries similar to whether a letter is confusing in violation of § 1692g. After all, as our cases reflect, the inquiry under §§ 1692e, 1692g and 1692f is basically the same: it requires a fact-bound determination of how an unsophisticated consumer would perceive the letter.")

### *The WCA*

48. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

49. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

50. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

51. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

52. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

10

53. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

54. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

55. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

56. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer ... in such a manner as can reasonably be expected to threaten or harass the customer."

57. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer …."

58. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

59. Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## COUNT I -- FDCPA

60. Count I is brought on behalf of Plaintiff Fondren.

61. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

62. Exhibit A represents to the unsophisticated consumer that the "Total Amount Due" was $90.80 even though only a portion of that balance was actually due when Exhibit A was mailed.

63. Exhibit A is misleading and confusing as to the amount, character, and legal status of the debt, and attempts to collect amounts that had not actually become due.

64. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10), 1692f, 1692f(1).

## COUNT II – WCA

65. Count II is brought on behalf of Plaintiff Fondren.

66. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

67. Exhibit A represents to the unsophisticated consumer that the "Total Amount Due" was $90.80 even though only a portion of that balance was actually due when Exhibit A was mailed.

68. Exhibit A is misleading and confusing as to the amount, character, and legal status of the debt, and attempts to collect amounts that had not actually become due.

69. Defendant violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## COUNT III – FDCPA

70. Count III is brought on behalf of Plaintiff Kobleski.

71. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

72. Exhibit B falsely represents that Plaintiff "PROMISED" to make payments to Defendant.

73. The false representation that Plaintiff is not making payments as "PROMISED" is intended to shame and disgrace the unsophisticated consumer.

74. Defendant violated 15 U.S.C. §§ 1692e, 1692e(7), and 1692e(10).

## CLASS ALLEGATIONS

75. Plaintiffs brings this action on behalf of two classes.

76. Class I ("Payment Plan Class") consists of:

(a) all natural persons in the State of Wisconsin, (b) who were sent a collection letter in the form represented by Exhibit A to the complaint in this action, (c) where the consumer was current on an installment payment plan with Defendant, (d) and the "Total Amount Due" stated in the letter in the form of Exhibit A was greater than the amount of the current installment payment, (e) for an alleged debt incurred for personal, family, or household purposes, (f) where the letter in the form of Exhibit A was mailed between January 21, 2019 and January 21, 2020, inclusive, and (f) was not returned by the postal service.

Plaintiff Fondren is the named representative of Class I.

77. Class II ("Promised Payments Letter Class") consists of:

(a) all natural persons in the State of Wisconsin, (b) who were sent a collection letter in the form represented by Exhibit B to the complaint in this action, (c) for an alleged debt incurred for personal, family, or household purposes, (d) where the consumer to whom the letter was mailed had not promised to make any payments

13

to Defendant, and (e) the letter in the form of <u>Exhibit B</u> was mailed between January 21, 2019 and January 21, 2020, inclusive, and (f) was not returned by the postal service.

Plaintiff Kobleski is the named representative of Class II.

78. Each Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of each Class.

79. There are questions of law and fact common to the members of each Class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Defendant violated the FDCPA and/or the WCA.

80. Plaintiffs' claims are typical of the claims of their respective class members. All are based on the same factual and legal theories.

81. Plaintiffs will fairly and adequately represent the interests of the members of each class. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

82. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## **JURY DEMAND**

83. Plaintiffs hereby demand a trial by jury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and the Class and against Defendant for:

(b) actual damages;

(c) statutory damages;

(d) injunctive relief;

(e) attorneys' fees, litigation expenses and costs of suit; and

(f) such other or further relief as the Court deems proper.

Dated: January 21, 2020

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com